UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

JEREMIAH N. GARRETT,

        Defendant.

Case No. 11-cr-40004-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Jeremiah N. Garrett's *pro se* motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 55) and related documents (Docs. 62, 66, 67, & 72). The Government has responded (Docs. 78-80).

**I.   Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>     (1) in any case—
>         (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

>> considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>> > (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release.  *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).  Otherwise the warden is not equipped to properly consider the defendant's request.

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants.  *Gunn*, 980 F.3d at 1180.  The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion."  *Id.*  Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it.  *Id.*  A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused."  *Id.*  Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case.  *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance.  That policy statement adds the provision requirement that the defendant not be a danger to the safety of any other person or to

the community. U.S.S.G. § 1B1.13(2).[1] The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

    **(A)**     **Medical Condition of the Defendant.—**
        (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
        (ii)     The defendant is—
                (I)     suffering from a serious physical or medical condition,
                (II)     suffering from a serious functional or cognitive impairment, or
                (III)     experiencing deteriorating physical or mental health because of the aging process,
        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    \* \* \*

    **(D)**     **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release, he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making this showing, and the Court has discretion to determine whether the defendant has satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021);

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

*Gunn*, 980 F.3d at 1180.  The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis.  *Gunn*, 980 F.3d at 1180.  The Court now turns to the specifics of the defendant's case.

**II.     Analysis**

In March 2011, Garrett pled guilty to two counts of distribution of crack cocaine.  At sentencing in June 2011, the Court found that Garrett's relevant conduct was 35.1 grams of crack cocaine, which under U.S.S.G. § 2D1.1 yielded a base offense level of 26.  The Court further found that Garrett was a career offender under U.S.S.G. § 4B1.1 based on a prior drug and a prior violent felony conviction, which raised his base offense level to 34.  His offense level was reduced by 3 points for timely acceptance of responsibility.  Considering Garrett's criminal history category of VI, established by his career offender status as well as his accumulation of 21 criminal history points, the guideline sentencing range was 188 to 235 months.  The Court imposed a sentence of 216 months on each count, to run concurrently.

Now, after having served around 10 years of his sentence, Garrett asks the Court for compassionate release on the grounds that his asthma, diabetes, and hypertension place him at an unacceptably high risk for serious harm from COVID-19.

In response, the Government first argues that Garrett has not exhausted his administrative remedies.  As for his asthma, the Government contends it does not amount to an extraordinary and compelling reason for release, even in combination with COVID-19.  It notes that, although Garrett claims to have suffered from asthma since he was a child, he did not mention it in his PSR interview.  He is currently receiving treatment in prison, although his medical records reflect he has recently resisted treatment in anticipation of compassionate release.  The

4

Government also points to his remarkable criminal history, replete with violent conduct, to show he is too dangerous to be released from prison at this time.

      A.      <u>Exhaustion of Administrative Remedies</u>

The Government invokes the defense of exhaustion of administrative remedies, asserting that Garrett has not presented any evidence he requested compassionate release from the warden of his facility—the United States Penitentiary at Allenwood, Pennsylvania ("USP-Allenwood") at the time he filed his motion—before he filed the motion.

The exhaustion of remedies portion of the compassionate release statute provides that a defendant may file a motion for compassionate release after the earlier of two events: (1) "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." As a practical matter, (2) will almost always provide the relevant exhaustion mark because it is virtually impossible to exhaust the BOP's comprehensive administrative remedy process within 30 days. Thus, the Court asks whether the defendant waited 30 days after the warden received his request before filing this motion.

In arguing that Garrett failed to exhaust administrative remedies, the Government does not take into account the Request for Administrative Remedy, sometimes called a BP-9 or a BP-229, that Garrett filed at USP-Allenwood on April 12, 2020, and that the institution marked "received" on April 16, 2020 (Doc. 62 at 2). In that request, Garrett asked for compassionate release because of COVID-19 and his asthma. Garrett filed the pending motion on May 26, 2020, more than 30 days later, while he was still incarcerated at USP-Allenwood.[3] Apparently,

---

[3] It appears Garrett has recently been transferred to USP-Victorville. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited June 4, 2021).

the warden at USP-Allenwood has no record of receiving the request (Doc. 66 at 12).

In light of the evidence submitted by Garrett, the Court finds he has exhausted his administrative remedies to the extent his current request is based on his asthma and the risk from COVID-19. He submitted a request for the warden via Request for Administrative Remedy, and its failure to reach the warden does not appear to be Garrett's fault. Thus, he exhausted all the administrative remedies that were available to him, and he cannot reasonably be expected to have done more. To the extent his request is based on diabetes and hypertension, he did not raise those issues in his communication to the warden, so he has not exhausted his administrative remedies as to those factors. *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).

      B.     <u>Reasons for Compassionate Release</u>

As for extraordinary and compelling circumstances, the defendant suffers from no more than asthma, a routine chronic condition that is being monitored and treated by prison medical personnel. It does not amount to an extraordinary and compelling reason supporting relief.

As for the COVID-19 pandemic, the Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release. . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Furthermore, the Court notes that the BOP has already administered more than 187,000 doses of a COVID-19 vaccine in total and has vaccinated approximately half of the inmates at the Federal Correctional Complex at Victorville, California, where Garrett is currently incarcerated. *See* BOP, COVID-19 vaccine implementation, https://www.bop.gov/coronavirus/ (visited June 4, 2021), which will greatly reduce the threat to inmates from the disease.

The Court finds that at this point the pandemic—alone or in combination with the defendant's health condition—does not constitute an extraordinary and compelling reason justifying immediate compassionate release. In prison, Garrett has access to medical care to tend to his health needs, and the BOP is taking measures to prevent the spread of COVID-19 within its prison facilities. In these circumstances, the Court does not view the COVID-19 pandemic as an extraordinary and compelling reason justifying immediate compassionate release.

C.      § 3553(a) Factors

Even if the Court had considered all the reasons Garrett set forth in his motion and had found that there were extraordinary and compelling reasons supporting compassionate release, the Court would deny relief based on its consideration of the § 3553(a) factors. The Court's analysis of those factors at the defendant's sentencing hearing continues to apply now. Garrett committed serious drug crimes, and had an extraordinary history of crime and violence. As for his official criminal history score under the guidelines, he accumulated 21 criminal history points in nearly record time—by age 26. Most offenders with that many points spend decades earning them, but Garrett was able to do it in only eight years. Additionally, his conduct for which he did not receive criminal history points completes a picture of a person who routinely commits acts of violence. Although the January 5, 2021, supplement to his motion (Doc. 72) suggests Garrett may be open to self-reflection on his past wrongs, he has not convinced the Court that he has successfully tamed this propensity for violence, that he is ready to abide by the rules of civilized society, or that he appreciates the gravity of his offense.[4] He still remains a danger to

---

[4] The Court notes that Garrett's release date as set forth on the BOP website has changed from November 30, 2026, when he asked the Court for compassionate release, to January 23, 2027, his current release date. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited June 4, 2021). This suggests to the Court that he may have lost good time credit for some kind of

the public and he still needs to serve his full sentence to serve the purposes of sentencing. In sum, Garrett has pointed to nothing that has materially changed since his sentencing with respect to the § 3553(a) factors and his current sentence remains appropriate.

### III.    Conclusion

For all of these reasons, the Court **DENIES** the defendant's motion for compassionate release (Doc. 55). The Court **DIRECTS** the Clerk of Court to send a copy of this order to Garrett at USP-Victorville, U.S. Penitentiary, P.O. Box 3900, Adelanto, CA  92301, and to change his address on file.

**IT IS SO ORDERED.**
**DATED:  June 7, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

misconduct since he first approached the Court.  If this were true, it would support the Court's conclusion that Garrett needs further rehabilitation and has not yet learned to respect the law.